UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLOUDERA, INC.,<br>　　　　Plaintiff,<br>　　v.<br>DATABRICKS, INC., et al.,<br>　　　　Defendants. | Case No. 21-cv-01217-HSG<br>**ORDER DENYING MOTION TO STAY AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br>Re: Dkt. Nos. 26, 57 |

Pending before the Court is Defendant Databricks, Inc. ("Databricks")'s motion to dismiss Plaintiff Cloudera, Inc. ("Cloudera")'s complaint, Dkt. Nos. 26 ("Mot"), 46 ("Opp."), 48 ("Reply"), and its motion to stay the case pending arbitration of Cloudera's claims against Defendant Richard Doverspike ("Doverspike"), Dkt. Nos. 26, 46, 48. The parties submitted supplemental briefing on the motion to stay to address new allegations and subsequent proceedings. *See* Dkt. Nos. 91, 93, 95. Having carefully considered the parties' arguments, the Court **DENIES** the motion to stay and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

**I.    BACKGROUND**

On January 8, 2021, Cloudera filed an initial complaint against Databricks and Doverspike in the District Court of the Northern District of Georgia. Dkt. No. 1. On January 13, 2021, Doverspike moved to compel Cloudera to arbitrate its claims against him and stay the remaining proceedings against him. Dkt. No. 20. Doverspike argued that Cloudera entered a binding Mutual Arbitration Agreement ("MAA") requiring claims arising out of or relating to his employment to be submitted to JAMS. Dkt. No. 20-1 at 3, 16. The next day, Databricks moved to stay the case pending the outcome of arbitration between Cloudera and Doverspike, or alternatively requested

to transfer the case to the Northern District of California. Dkt. No. 26.

On January 27, 2021, Cloudera filed its first amended complaint alleging four causes of action against Databricks and five causes of action against Doverspike. Dkt. No. 49 ("FAC") ¶¶ 150–235. Specifically, Cloudera alleges that Databricks and Doverspike violated the federal Defend Trade Secrets Act ("DTSA") and the Georgia Trade Secrets Act ("GTSA"). *Id.* at ¶¶ 178–227. Cloudera also brings two tortious contract interference claims against Databricks alleging that it "induced Doverspike and dozens of other employees to breach their contractual obligations with Cloudera to gain access to Cloudera's confidential, proprietary, and trade secret information" and "induced [John] Nieters and dozens of other Cloudera employees to breach their contractual obligations with Cloudera to recruit current Cloudera employees, such as Doverspike." *Id.* at ¶¶ 165, 173. Lastly, Plaintiff alleges that Doverspike violated the Computer Fraud and Abuse Act and the Georgia Computer Systems Protection Act and breached the non-disclosure and customer non-solicitation provisions of the Proprietary Information and Inventions Agreement & Non-Compete Agreement ("PIIA"). *Id.* at ¶¶ 150–61, 220–35.

On February 10, 2021, Databricks moved to dismiss the FAC. Dkt. No. 57. On February 18, 2021, the Georgia district court granted Doverspike's motion to compel arbitration and stayed Cloudera's claims against Doverspike pending the outcome of arbitration. Dkt. No. 59 at 18. Additionally, it granted Databricks's motion to transfer the claims against it to the Northern District of California and deferred ruling on Databricks's motion to stay. *Id.*

The case was assigned to the undersigned on February 24, 2021. Dkt. No. 65. On February 26, 2021, JAMS began arbitration proceedings between Cloudera and Doverspike. Opp. at 5. On March 17, 2021, Databricks re-noticed its motion to dismiss and its motion to stay. Dkt. Nos. 71–72.

## II. MOTION TO STAY

### A. Legal Standard

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To

2

determine whether a *Landis* stay is warranted, courts consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). "[I]f there is even a fair possibility that the stay for which [the requesting party] prays will work damage to [someone] else," then the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

**B.    Analysis**

Databricks moves to stay the case in its entirety pending the ongoing JAMS arbitration between Cloudera and Doverspike. Databrick contends that there is a significant risk of inconsistent rulings if this case proceeds before the Doverspike arbitration is complete, and that the arbitration will simplify legal and factual issues. Cloudera opposes any stay because, among other reasons, it "faces significant potential harm" from an indefinite stay and because all claims against Databricks will proceed regardless of the outcome in the arbitration. Dkt. No. 93 at 6–7, 11.

As to the first factor, Databricks argues that Cloudera will not be harmed by a stay because the JAMS arbitration "has been proceeding diligently for many months and is likely to conclude in a reasonable time frame." Dkt. No. 91 at 11. Databricks also argues that Cloudera's two-year delay in filing suit "undermines" any asserted harm from a "short stay." *Id.* To support its claim of "significant potential harm," Cloudera contends that a stay creates "a risk of spoilation by Databricks and the approximately 20 or more employees that violated their contracts and misappropriated Cloudera's trade secrets," that injunctive relief claims are pending, and that Databricks requests an "indefinite and lengthy stay." Dkt. No. 93 at 6–8. Cloudera argues that its forensic examination showed that former employees "took active measures to destroy, delete, overwrite, and otherwise alter forensic and electronic evidence in the days and weeks immediately

3

before the devices . . . were to be surrendered to Cloudera's forensic expert." *Id.* at 6 (citing FAC ¶¶ 136–41). It further argues that Databricks recently "restarted its campaign to poach Cloudera employees and misappropriate its trade secrets." *Id.* at 8 (citing FAC ¶¶ 144–45).

Though Databricks itself is obligated to preserve evidence, the Court finds that Cloudera has demonstrated a fair possibility of harm due to the potential for loss of evidence based on former employees' actions. For example, Cloudera argues that one employee "went so far as to overwrite his laptop's hard drive with hundreds of copies of the movie 'WALL-E.'" *Id.* at 6 (citing FAC ¶ 137). Additionally, the Court is unpersuaded by arguments relating to any purported delay given that Cloudera filed suit shortly after learning that Databricks allegedly "resumed" its unlawful practices. *See* FAC ¶ 144.

Given that Cloudera has demonstrated a "fair possibility" of harm, Databricks is required to "make out a clear case of hardship or inequity in being required to go forward." *See Landis*, 299 U.S. at 255. The Court finds it has not done so. Databricks contends there is a significant risk of inconsistent rulings on overlapping questions of law and fact. Dkt. No. 91 at 5. Cloudera responds that "Databricks fails to appreciate the scope of Cloudera's claims against it." Dkt. No. 93 at 9. As discussed below, Plaintiff alleges Databricks is vicariously liable for the alleged misappropriation of several other departing employees apart from Doverspike, including at least three named employees. *See*, *e.g.*, FAC ¶¶ 187, 195, 214. And regardless of the amount of overlap, as the Court advised during the hearing, inconsistent rulings may result even if the Court were to grant the stay. For the same reason, the Court finds that the likelihood of any simplification of the case is slight. Accordingly, Databricks also has not shown that a stay would promote the orderly course of justice. The Court finds that a stay is not warranted under the circumstances and **DENIES** the motion to stay.

### III. MOTION TO DISMISS

#### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

4

granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### B. Analysis

As to Plaintiff's trade secret misappropriation claims, Databricks contends that Cloudera fails to allege facts showing that Databricks acquired Cloudera's trade secrets, that it took reasonable steps to protect its purported trade secrets, and that it suffered any loss or injury from the purported misappropriation. As to Cloudera's state-law claims, Databricks argues that Cloudera's non-disclosure tortious interference claim is preempted by the GTSA and that its non-solicitation tortious interference claim is factually and legally deficient.

#### i. Trade Secret Misappropriation Claims

Databricks argues that Cloudera fails to allege sufficient facts showing that Databricks actually acquired, used, or disclosed any of its trade secrets. Mot. at 14. Cloudera responds that its allegations show that Databricks improperly acquired its trade secrets and support the reasonable inference that Databricks is liable "under theories of collusion, respondeat superior[,] and ratification." Opp. at 1. Cloudera argues that "plaintiffs can rely on circumstantial evidence to prove their case" because "direct evidence of misappropriation and misuse is not always available." *See M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 400 F. Supp. 3d 867, 893

(N.D. Cal. 2019). Cloudera notes that Databricks does not challenge the sufficiency of its allegations that departing employees acquired Cloudera's trade secret information "by copying it, downloading it, saving it to storage devices or emailing it to themselves in preparation for their new jobs." Opp. at 7. But Databricks contends that it cannot be held vicariously liable absent "*specific factual allegations* demonstrating the employer's knowledge and involvement in specific instances of misappropriation." Reply at 2 (emphasis in original).

The Court finds that as pled, the allegations are sufficient to state a plausible claim for trade secret misappropriation. The FAC alleges that at least three named former employees disclosed Cloudera's trade secrets. For example, Cloudera alleges that one employee sent Databricks a presentation with trade secret information about Cloudera's relationship with Microsoft, "a Cloudera partner," and another sent a "slide deck" that Cloudera had purchased to his Databricks email and to Databricks's Strategic Sales Executive for Financial Services. FAC ¶¶ 113–15, 128. Cloudera also alleges that during the interview process of Terry Savage, another former employee, Savage "identified a number of Cloudera's clients" in a business plan presentation that stated his plan was to "steal existing workload from" Cloudera. FAC ¶ 119 (alterations omitted). It further alleges that Savage provided "trade secret information about Cloudera's relationship with Microsoft," and that Databricks requested that Savage join a call with Microsoft while he was still a paid Cloudera employee. *Id.* at ¶ 120 (alterations omitted). After accepting an offer of employment, Savage allegedly sent his contact list from his Cloudera email account to his personal email and stored trade secret information "on 14 different USB external storage devices, at least one of which he continued connecting to his computer as a Databricks employee." *Id.* at ¶ 121.

These allegations reasonably support an inference that Databricks was involved in specific instances of misappropriation by, for example, asking Savage to join a call with Microsoft because it knew he had purported trade secret information about Cloudera's relationship with Microsoft. *See Krypt, Inc. v. Ropaar LLC*, No. 19-CV-03226-BLF, 2020 WL 3639651, at *9 (N.D. Cal. July 6, 2020) (finding that allegations that departing employee performed "work on behalf of [defendant] and saved certain [] confidential documents to personal cloud-based accounts and

USB drives" stated a plausible claim for trade secret misappropriation).

Databricks next argues that Cloudera fails to allege sufficient facts to show it took reasonable steps to protect the information that was purportedly misappropriated. Mot. at 16–17. Databricks contends that Cloudera took "no steps to enjoin the use of" information retained by departing employees in 2018 and 2019 "in the two years since it learned about the alleged misappropriation." *Id.* at 17. Databricks argues that this delay "undermines any claim" that this information was "trade secret information." *Id.*

The Court disagrees. Cloudera alleges it had several protective procedures in place, including the use of non-compete agreements, cybersecurity measures, and routine training about trade secret information. Opp. at 14 (citing FAC ¶ 17). More importantly, Cloudera alleges that it notified Databricks of the findings of its forensic examination and that Databricks represented it removed any Cloudera property and adopted measures to prevent disclosure of Cloudera secrets. FAC ¶¶ 135, 142. Based on these allegations, the Court finds that any purported delay in filing suit concerning the information at issue does not change that the complaint sufficiently alleges that Cloudera took reasonable measures.

Lastly, Databricks argues that Cloudera fails to allege sufficient facts to show Cloudera suffered any injury or loss from the alleged misappropriation. Mot. at 2. Cloudera responds that it adequately alleges damages, including "damage to its reputation, customer base, and economic advantage," "monetary damages," and "substantial and irreparable injury." Opp. at 18. Cloudera cites to several cases for the proposition that damages in trade secret misappropriation cases are "essentially presumed." *Id.* at 17 n.7. Databricks makes no effort to distinguish these cases or otherwise respond to Cloudera's arguments. At this stage, the Court is satisfied that Cloudera has adequately alleged an injury.

Because Cloudera has alleged plausible claims for trade secret misappropriation, the Court **DENIES** Databricks's motion to dismiss those claims.

###    ii.   Tortious Interference Claims

As to its non-disclosure tortious interference claim, Cloudera alleges that Databricks "induced Doverspike and dozens of other employees to breach their contractual obligations with

7

Cloudera to gain access to Cloudera's confidential, proprietary, and trade secret information." FAC at ¶ 165. Databricks contends that this claim is based on the same factual allegations as the underlying misappropriation claims and is thus preempted by the GTSA.

The GTSA preempts claims that "rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 466 (Ga. 2012) (citation omitted). "However, the GTSA contains an important statutory exception; it does not preempt claims based on '[c]ontractual duties or remedies, whether or not based upon misappropriation of a trade secret.' " *Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*, No. 1:18-CV-01229-SDG, 2021 WL 118642, at *6 (N.D. Ga. Jan. 13, 2021) (citing O.C.G.A. § 10-1-767(b)(1)). Accordingly, "a claim seeking remedy for an injury caused not by the misappropriation of proprietary information, but by separate conduct – such as the misappropriation of physical property or the improper interference with contractual relationships respecting something other than proprietary information – [ ] cannot be said to be in conflict with the GTSA." *Mauser USA, LLC v. Wilburn*, No. 1:19-CV-02361-AT, 2019 WL 8376209, at *4 (N.D. Ga. Nov. 22, 2019) (quotations and citation omitted).

At the hearing, Cloudera conceded that its non-disclosure tortious interference claim is preempted, and the Court agrees. The Court finds that Cloudera bases its non-disclosure tortious interference claim on the same factual information underlying its GTSA claim and that this claim does not concern separate conduct. Accordingly, the Court **DISMISSES** Cloudera's non-disclosure tortious interference claim **WITHOUT LEAVE TO AMEND**.

As to its non-solicitation tortious interference claim, Cloudera alleges that Databricks "induced [John] Nieters and dozens of other Cloudera employees to breach their contractual obligations with Cloudera to recruit current Cloudera employees, such as Doverspike." FAC at ¶ 173. Cloudera notes that these employees "were bound by a PIIA," precluding them from soliciting certain Cloudera customers or employees for twelve months after their employment ends. Opp. at 2 (citing FAC ¶¶ 35–43, 110). Databricks argues that the non-solicitation tortious interference claim fails because the FAC alleges no plausible breach of the non-solicitation provision, relying instead on speculative allegations. Mot. at 25 n.8; Reply at 8–9. Specifically,

8

Cloudera alleges that "[o]n information and belief, Nieters, acting in his capacity as a Databricks employee, recruited Doverspike to Databricks"; "Nieters' recruitment of Doverspike and, on information and belief, other Cloudera employees on behalf of Databricks is contrary to" Cloudera's employment agreements; and "Databrick is intentionally interfering with Cloudera's employment agreements with at least Doverspike and Nieters, by, among other things, on information and belief, using Nieters to recruit Doverspike to Databricks, and, on information and belief, allowing Nieters and Doverspike to contact former Cloudera accounts in violation of their agreements."  FAC at ¶¶ 52, 103, 145.

Databricks contends that "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." Mot. at 7 (citing *Solis v. City of Fresno*, No. 1:11-CV-00053 AWI, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012)).  Cloudera did not address whether its non-solicitation tortious interference claim is factually deficient, but elsewhere argues that it was "appropriate" to allege facts regarding Databricks's "knowledge and intentions on information and belief" in light of Databricks's "refusal to cooperate in the investigation and the spoliation efforts by the departing Cloudera employees."  Opp. at 6 n.3.  In setting out the legal standard for a motion to dismiss, Cloudera points to *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), for the proposition that an allegation made on information and belief is sufficient "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."

Although courts may consider whether "facts are peculiarly within the possession and control of the defendant, such latitude does not mean that conclusory allegations are permitted." *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2020 WL 1877707, at *4 n.10 (N.D. Cal. Apr. 15, 2020) (quotations and citation omitted).  Here, Plaintiff relies solely on conclusory "information and belief" allegations that Nieters recruited Doverspike and that some unnamed former Cloudera employees also recruited other former employees.  *See* FAC at ¶¶ 52, 103, 145, 173.  Even viewing the allegations in the light most favorable to Cloudera, there are not sufficient allegations to plausibly support an inference that Databricks unlawfully induced

Nieters or other unnamed individuals to recruit former Cloudera employees. Accordingly, the Court **DISMISSES** Cloudera's non-solicitation tortious interference claim **WITH LEAVE TO AMEND**.

Given that Plaintiff has not met its pleading burden, the Court defers ruling on Databricks's argument about the enforceability of the non-solicitation provision. The parties disagree as to which choice of law provision applies. As discussed above, Cloudera alleges that dozens of unnamed employees from various, unspecified jurisdictions recruited other Cloudera employees. *See* FAC at ¶ 173 (alleging that Databricks "induced [John] Nieters and dozens of other Cloudera employees to breach their contractual obligations with Cloudera to recruit current Cloudera employees, such as Doverspike."). The FAC alleges that each of the recruited employees signed a "PIIA with identical or substantially similar terms to the PIIA executed by Doverspike through which he/she agreed, among other obligations, to not disclose or use Cloudera's Proprietary Information (except within the scope of his/her employment with Cloudera), and to return all Cloudera Proprietary Information upon termination." *Id.* at ¶ 110. Because this allegation appears to focus on the misappropriation, rather than on the violation of the bar to recruiting other employees, it is unclear whether all agreements would include substantially similar choice of law provisions. *See also* Dkt. No. 93 ("Many, if not all, of those employees [who violated their contracts] are in different jurisdictions than Mr. Doverspike."). Given these circumstances, to effectively defend against this non-solicitation tort claim, Databricks would need to know the locations of the other dozens of offending employees. In amending the complaint, Cloudera should include basic facts to allow Databricks to effectively address the non-solicitation provision. As discussed during the hearing, these facts at a minimum include the individual's residence, the location where the individual worked, and whether the individual worked remotely.

//
//
//
//

## IV. CONCLUSION

The Court **DENIES** the motion to stay and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. Dismissal is with leave to amend, except as otherwise stated above. Any amended complaint must be filed within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 8/30/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge