1  LANCE A. ETCHEVERRY (SBN 199916)
   Lance.Etcheverry@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue
3  Palo Alto, California 94301
   Telephone:     (650) 470-4500
4  Facsimile:     (650) 470-4570

5  JAMES R. CARROLL (*pro hac vice*)
   james.carroll@skadden.com
6  CHRISTOPHER G. CLARK (*pro hac vice*)
   christopher.clark@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   500 Boylston Street
8  Boston, Massachusetts 02116
   Telephone:     (617) 573-4800
9  Facsimile:     (617) 573-4822

10 Attorneys for Defendant Databricks, Inc.

11

12

13                      UNITED STATES DISTRICT COURT

14                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                             OAKLAND DIVISION

16 CLOUDERA, INC.,                    )   CASE NO.: 4:21-cv-01217-HSG
                                      )
17                      Plaintiff,    )   **(1)  DEFENDANT DATABRICKS,**
                                      )        **INC.'S NOTICE OF MOTION AND**
18             v.                     )        **MOTION TO DISMISS THE**
                                      )        **SECOND AMENDED**
19 DATABRICKS, INC.,                  )        **COMPLAINT;**
                                      )
20                      Defendant.    )   **(2)  MEMORANDUM OF POINTS AND**
                                      )        **AUTHORITIES IN SUPPORT**
21                                    )        **THEREOF;**
                                      )
22                                    )   **(3)  DECLARATION OF**
                                      )        **CHRISTOPHER G. CLARK (lodged**
23                                    )        **under separate cover); AND**
                                      )
24                                    )   **(4)  [PROPOSED] ORDER (lodged**
                                      )        **under separate cover)**
25                                    )
                                      )   Date:  March 3, 2022
26                                    )   Time:  2:00 p.m.
                                      )   Second Amended Complaint Filed:
27                                    )   September 20, 2021
                                      )
28 _____  )

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on March 3, 2022, at 2:00 p.m., or as soon thereafter as the

4  matter may be heard at the above-entitled Court, located at Oakland Federal District Courthouse,

5  1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California 94612, Defendant Databricks, Inc.

6  ("Databricks") will move the Court for an order dismissing the Second Amended Complaint.

7      Databricks's requested relief is based on this Notice of Motion and Motion, the accompanying

8  Memorandum of Points and Authorities, Declaration of Christopher G. Clark in Support of

9  Defendant Databricks, Inc.'s Motion to Dismiss the Second Amended Complaint, the [Proposed]

10 Order, any oral argument heard by the Court, and such other matters as the Court may consider.

11      DATED:  October 22, 2021

12

13                                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

14                             By:  _____/s/ Christopher G. Clark_____
                                              Christopher G. Clark
15                                           Attorney for Defendant
                                                Databricks, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................... 2

    I.       CLOUDERA ASSERTS A TORTIOUS
            INTERFERENCE CLAIM AGAINST DATABRICKS
            BASED ON CONCLUSORY ALLEGATIONS REGARDING DOZENS
            OF MOSTLY UNIDENTIFIED FORMER CLOUDERA EMPLOYEES ............. 2

    II.      THE COURT GRANTED DATABRICKS'S MOTION TO DISMISS
            CLOUDERA'S NON-SOLICITATION TORTIOUS INTERFERENCE
            CLAIM WITH LEAVE TO ATTEMPT TO REPLEAD THE CLAIM ................ 3

    III.     CLOUDERA'S SECOND AMENDED COMPLAINT STILL
            FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE
            WITH ANY VALID EMPLOYEE NON-SOLICITATION PROVISION ........... 3

ARGUMENT .......................................................................................................................... 5

    I.       LEGAL STANDARDS ......................................................................................... 5

    A.      Rule 12(b)(6) Standard ........................................................................................ 5

    B.      Applicable Law .................................................................................................... 6

    II.      THE COURT SHOULD DISMISS
            THE TORTIOUS INTERFERENCE CLAIM IN COUNT I ................................ 6

    A.      Count I Fails To State A Claim And Should
            Be Dismissed To The Extent That It Is Based On Conclusory
            Allegations Regarding Dozens Of Unidentified Former Employees .................... 7

    B.      Count I Fails To State A Claim And
            Should Be Dismissed As To Mr. Nieters ............................................................. 8

         1.      The Second Amended Complaint Fails To Plausibly Plead
                  Any Solicitation By Mr. Nieters Of Any Cloudera Employee ........ 8

         2.      The Employee Non-Solicitation Provision
                   In The Nieters Agreement Is Not Enforceable ............................... 9

              (a)     The Nieters Agreement Is Governed
                      By California Law And So Its Employee
                      Non-Solicitation Provision Is Unenforceable ................... 10

i

(b) Employee Non-Solicitation
Provisions Like Those At Issue Here
Are Not Enforceable Under California Law ...................... 12

(c) The Employee Non-Solicitation
Provision In The Nieters Agreement
Also Is Unenforceable Under Georgia Law ...................... 13

C. Count I Fails To State A Claim And Should
Be Dismissed As To Mr. Delaney Because The
Delaney Agreement Is Governed By California Law
And So Its Non-Solicitation Provision Is Unenforceable ...................................... 14

D. The Court Should Dismiss Count I With Prejudice ................................................ 15

CONCLUSION ........................................................................................................................ 16

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*American Homepatient, Inc. v. Collier,*
No. CIV.A. 274-N, 2006 WL 1134170 (Del. Ch. Apr. 19, 2006) ................................. 8

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.,*
28 Cal. App. 5th 923 (2018) ....................................................................... 12, 14

*Arthur J. Gallagher & Co. v. Tarantino,*
498 F. Supp. 3d 1155 (N.D. Cal. 2020) ........................................... 6, 9, 12, 13, 15

*Ascension Insurance Holdings, LLC v.Underwoo*d,
No. C.A. No.9897-VCG 2015 WL 356002 (Del. Ch. Jan. 28, 2015).......................... 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................ 5

*Barker v. Insight Glob., LLC,*
No. 16-CV-07186-BLF, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ................... 12, 15

*BB&T Insurance Services, Inc. v. Renno,*
No. A21A1114, 2021 WL 4771343 (Ga. Ct. App. Oct. 13, 2021).......................... 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................... 5

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994) ............................................................................... 4

*Chin v. Chrysler LLC,*
538 F.3d 272 (3d Cir. 2008).............................................................................. 6

*Convergys Corp. v. Keener,*
276 Ga. 808, 582 S.E.2d 84 (Ga. 2003) ............................................................ 6

*Cox v. Altus Healthcare & Hospice, Inc.,*
308 Ga. App. 28, 706 S.E.2d 660 (2011)............................................................ 14

*Dalton Diversified, Inc. v. AmSouth Bank,*
270 Ga. App. 203, 605 S.E. 2d 892 (2004)......................................................... 6

*Danaher Corp. v. Lean Focus, LLC,*
No. 19-CV-750-WMC, 2020 WL 4260487 (W.D. Wis. July 24, 2020) ..................... 13

*Edwards v. Arthur Andersen LLP,*
44 Cal. 4th 937 (2008) .................................................................................... 12

iii

*Foman v. Davis,*
    371 U.S. 178 (1962)..................................................................................................15

*Galbraith v. County of Santa Clara,*
    307 F.3d 1119 (9th Cir. 2002) ...................................................................................4

*Gonzalez v. Planned Parenthood of L.A.,*
    759 F.3d 1112 (9th Cir. 2014) ...................................................................................5

*Irving Firemen's Relief & Retirement Fund v.Uber Technologies,*
    398 F. Supp. 3d 549 (N.D. Cal. 2019) .....................................................................15

*Irving Firemen's Relief & Retirement Fund v.Uber Technologies, Inc.,*
    998 F.3d 397 (9th Cir. 2021) ...................................................................................15

*Kuehn v. Selton & Associates, Inc.,*
    242 Ga. App. 662, 530 S.E.2d 787 (2000)...............................................................11

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019)..............................................................................................10

*Lee v. North Illinois Regional Commuter Rail Road Corp.,*
    912 F.3d 1049 (7th Cir. 2019) .................................................................................15

*Mulquin v. Nektar Therapeutics,*
    510 F. Supp. 3d 854 (N.D. Cal. 2020) .....................................................................15

*Office Depot, Inc. v. District at Howell Mill, LLC,*
    309 Ga. App. 525, 710 S.E.2d 685 (2011)...............................................................11

*Roadrunner Intermodal Services, LLC v. T.G.S. Transportation, Inc.,*
    No. 1:17-CV-01207-DAD-BAM, No. 1:17-CV-01056-DAD-BAM,
    2019 WL 1400093 (E.D. Cal. Mar. 28, 2019) .........................................................11

*Sandquist v. Lebo Automotive, Inc.,*
    376 P.3d 506 (Cal. 2016) .........................................................................................10

*Shannon-Vail Five Inc. v. Bunch,*
    270 F.3d 1207 (9th Cir. 2001) ...................................................................................6

*SmileCare Dental Group v. Delta Dental Plan, Inc.,*
    88 F.3d. 780 (9th Cir. 1996) ......................................................................................5

*Solis v. City of Fresno,*
    No. 1:11-cv-00053 AWI GSA, 2012 WL 868681 (E.D. Cal. Mar. 13, 2012)...............8

*TSI USA LLC v. Uber Technologies, Inc.,*
    No. 17-CV-03536-HSG, 2018 WL 4638726 (N.D. Cal. Sept. 25, 2018)....................13

iv

*Wells Fargo Insurance Services USA, Inc. v. Link,*
    372 N.C. 260, 827 S.E.2d 458 (2019) ................................................................. 13

*WeRide Corp. v. Kun Huang,*
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ......................................................... 12, 15

*WeRide Corp. v. Kun Huang,*
    No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ................... 12

*Wetherington v. AmeriPath, Inc.,*
    No. 1:10-CV-1108-AT, 2012 WL 12868427 (N.D. Ga. Mar. 30, 2012) .......... 11, 12, 14

*Wetherington v. AmeriPath, Inc.,*
    566 F. App'x 850 (11th Cir. 2014) ...................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) .............................................................................. 15

## STATUTES

28 U.S.C. § 1404(a) ..................................................................................................... 6

California Business & Professions Code § 16600 ................................................. 12, 13

## RULES

Fed. Civ. P. Rule 8(a) .................................................................................................. 8

Fed. Civ. P. Rule 12(b)(6) ........................................................................................... 5

Fed. Civ. P. Rule 15(a) .............................................................................................. 15

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2                 **PRELIMINARY STATEMENT**

3       Plaintiff Cloudera, Inc.'s ("Cloudera") third pleading in this matter still fails to allege a

4 viable claim for tortious interference against Defendant Databricks, Inc. ("Databricks").  As the

5 Court has already noted in its prior ruling dismissing Cloudera's last attempt at pleading such a

6 claim, Cloudera cannot plausibly allege a tortious interference claim based "solely on conclusory

7 'information and belief' allegations that Nieters recruited Doverspike and that some unnamed

8 former Cloudera employees also recruited other former employees."  (ECF No. 106 at 9.)

9       However, despite this Court's direction when it granted Cloudera leave to amend, Cloudera

10 has not added a single specific factual allegation of any action taken by Mr. Nieters or the "dozens"

11 of unidentified Cloudera employees that would violate any employee non-solicitation covenants

12 with Cloudera—let alone any actions taken by Databricks that could induce such breaches.  While

13 the Second Amended Complaint added some additional allegations regarding another Databricks

14 employee, identified for the first time (Mr. Delaney), those allegations fail to state a tortious

15 interference claim as a matter of law because the employee's employment agreement with Cloudera

16 is expressly governed only by California law, and so is unenforceable.  Accordingly, Cloudera has

17 again failed to meet its pleading burden with respect to those employees, and this Court can and

18 should dismiss Count I of the Second Amended Complaint ("SAC") on that ground alone.

19       In addition to these fatal pleading defects, the two underlying employment agreements

20 identified by Cloudera (with Mr. Nieters and Mr. Delaney) are unenforceable as a matter of law.

21 Both Georgia and California law on restrictive covenants disfavors enforcement of the broad non-

22 solicitation provisions at issue here.

23       Cloudera has had three chances to state a tortious interference claim and has failed to do so.

24 This Court should dismiss Count I with prejudice, as Cloudera has repeatedly failed to identify a

25 plausible tortious interference claim despite multiple opportunities to replead.

26

27

28

DEFENDANT'S MOTION TO DISMISS SAC                         CASE NO.: 4:21-cv-01217-HSG

**BACKGROUND**

**I.    CLOUDERA ASSERTS A TORTIOUS INTERFERENCE CLAIM AGAINST DATABRICKS BASED ON CONCLUSORY ALLEGATIONS REGARDING DOZENS OF MOSTLY UNIDENTIFIED FORMER CLOUDERA EMPLOYEES**

On January 8, 2021, Cloudera filed its original complaint in this action in Georgia federal court, asserting four claims against Databricks related to its hiring of Ricky Doverspike.  (Compl., ECF No. 1.)  That original complaint asserted a claim for tortious interference with contractual relations (Count III) based on allegations "on information and belief" that Databricks purportedly induced John Nieters, a current Databricks employee previously employed by Cloudera, to breach the non-solicitation provision in Mr. Nieters's employment agreement with Cloudera by recruiting Mr. Doverspike.  (*Id.* ¶¶ 47, 95, 121.)

After Databricks moved to dismiss the original Complaint (ECF No. 27), Cloudera filed an Amended Complaint on January 27, 2021.  (ECF No. 49.)  The Amended Complaint asserted the same four claims against Databricks, including the same non-solicitation tortious interference claim.  (*Compare* ECF No. 1, Count III *with* ECF No. 49, Count III.)  The Amended Complaint did not include any further allegations regarding Mr. Nieters's supposed recruitment of Mr. Doverspike.  Instead, the Amended Complaint expanded its "information and belief" allegations to include assertions that Databricks purportedly had induced "dozens of" unidentified former Cloudera employees to breach their Cloudera employment agreements by recruiting other unidentified Cloudera employees for Databricks.  (*See* ECF No. 49, ¶¶ 51, 103, 145, 173.)  Those assertions lacked the required factual allegations of actual violative conduct.

Accordingly, on February 10, 2021, Databricks moved to dismiss the Amended Complaint and its non-solicitation tortious interference claim.  (ECF No. 57.)  In that motion, Databricks raised two arguments for dismissing the non-solicitation tortious interference claim: first, the claim was based only on speculative "information and belief" allegations and therefore failed to satisfy the applicable pleading standard, and second, the employee non-solicitation provisions contained in the underlying Cloudera employment agreements that allegedly had been violated were unenforceable under either California law (the law of the agreements between Cloudera and its employees) or Georgia law (the law of the forum in which Cloudera commenced this action).

2

1   (ECF No. 57-1 at 23-25; ECF No. 92 at 8-15.)

2   **II.    THE COURT GRANTED DATABRICKS'S MOTION TO DISMISS
        CLOUDERA'S NON-SOLICITATION TORTIOUS INTERFERENCE**
3       **CLAIM WITH LEAVE TO ATTEMPT TO REPLEAD THE CLAIM**

4           This action was subsequently transferred from Georgia federal court to this Court while that

5   motion to dismiss was being briefed.  (ECF No. 59.)  On June 24, 2021, this Court heard oral

6   argument on Databricks's motion to dismiss the Amended Complaint.  (ECF No. 102.)

7           On August 30, 20201, this Court granted Databricks's motion to dismiss in part.  ("MTD

8   Order," ECF No. 106.)  The Court granted Databricks's motion to dismiss the non-solicitation

9   tortious interference claim (Count III of the Amended Complaint).  In dismissing that claim, the

10  Court held that "[e]ven viewing the allegations in the light most favorable to Cloudera, there are

11  not sufficient allegations to plausibly support an inference that Databricks unlawfully induced

12  Nieters or other unnamed individuals to recruit former Cloudera employees."  (*Id.* at 9-10.)

13  Specifically, the Court stated that Cloudera "relies solely on conclusory 'information and belief'

14  allegations that Nieters recruited Doverspike and that some unnamed former Cloudera employees

15  also recruited other former employees," which this Court concluded were insufficient as a matter of

16  law to state a claim.  (*Id.* at 9.)

17          The  Court granted Cloudera leave to attempt to replead the non-solicitation claim, but

18  expressly directed Cloudera that any amended claim must include enough "basic facts to allow

19  Databricks to effectively address the non-solicitation provision.  As discussed during the hearing,

20  these facts at a minimum include the individual's residence, the location where the individual

21  worked, and whether the individual worked remotely."  (*Id.* at 10; *see also* Clark Decl. Ex. A (June

22  24, 2021 Hrg. Tr.) at 17:16-18:23.)

23  **III.   CLOUDERA'S SECOND AMENDED COMPLAINT STILL
        FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE**
24      **WITH ANY VALID EMPLOYEE NON-SOLICITATION PROVISION**

25          On September 20, 2021, Cloudera filed its Second Amended Complaint—the third pleading

26  that Cloudera has filed in an attempt to state claims in this action.  (SAC, ECF No. 108.)  The

27  Second Amended Complaint includes as Count I a renewed attempt to assert a claim against

28  Databricks for tortious interference with employee non-solicitation provisions in Cloudera's

3

1    employment agreements.

2        Despite this Court's clear directive that Cloudera should provide "at minimum" basic facts

3    such as which individuals Databricks purportedly induced to breach their agreements, the Second

4    Amended Complaint still makes reference to "dozens of other Cloudera employees" and identifies

5    just two individuals—Mr. Nieters (who was mentioned by name in Cloudera's first two pleadings)

6    and Kevin Delaney (a new name included for the first time).  (*Id.* ¶ 160.)  Notably, the Second

7    Amended Complaint's allegations regarding any purported recruitment by Mr. Nieters are still

8    merely assertions "on information and belief."  (*Id.* ¶¶ 95, 112, 149.)  The only additional

9    substantive, non-conclusory allegation added regarding Mr. Nieters in the Second Amended

10   Complaint is an allegation regarding his residence and place of work.  (*Id.* ¶ 86.)

11       As with the Amended Complaint, the Second Amended Complaint simply asserts that all of

12   the former Cloudera employees signed employment agreements identical to one of two variations

13   (either a Hortonworks or a Cloudera agreement), but the Second Amended Complaint does not

14   include the complete version of either agreement.  (SAC ¶ 42.)[1]  Employees who were originally

15   employed by Hortonworks, Inc. ("Hortonworks") before it was acquired by Cloudera signed an

16   Offer of Employment ("Offer Letter") from Hortonworks, including a Proprietary Information and

17   Inventions Agreement & Non-Compete Agreement ("PIIA"), and Mutual Arbitration Agreement,

18   referred to collectively herein as the "Nieters Agreement."  (*See id.* ¶¶ 19-30; *see also* Clark Decl.

19   Ex. B (Offer Letter, including PIIA and Mutual Arbitration Agreement[2]).)  Other Cloudera

20   _____

21   [1]    Despite an extensive discussion at the June hearing by counsel for both parties and the
     Court regarding the need for the full employment agreements to resolve Databricks's pleading stage

22   challenges (Clark Decl. Ex. A at 16:9-18:19), Cloudera failed to provide copies of the agreements
     at issue with the Second Amended Complaint.  Databricks has submitted copies of a Hortonworks

23   Offer Letter, including the PIIA and Mutual Arbitration Agreement, and a Cloudera ECIIPAA
     as Exhibits B and C to the Declaration of Christopher G. Clark, filed contemporaneously with this

24   Motion.  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[W]hen [the] plaintiff fails to
     introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as

25   part of his motion attacking the pleading." (second and third alterations in original)), *overruled on
     other grounds Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

26   [2]    Exhibit B of the Declaration of Christopher G. Clark is the Offer Letter, PIIA and Mutual

27   Arbitration Agreement between Hortonworks and Mr. Doverspike, which the Second Amended
     Complaint alleges is identical or substantially similar to the agreement entered into between

28   Hortonworks and Mr. Nieters.  (*See* SAC ¶¶ 19-22, 37, 89; *see also* Am. Compl. ¶ 92.)

4

1  employees signed an Offer Letter that included an Employment, Confidential Information and

2  Intellectual Property Assignment Agreement, referred to herein as the "Delaney Agreement."[3]  (*See*

3  SAC ¶¶ 19, 31-36; *see also* Clark Decl. Ex. C (Employment, Confidential Information and

4  Intellectual Property Assignment Agreement).)

5                                                          **ARGUMENT**

6  **I.      LEGAL STANDARDS**

7            **A.      Rule 12(b)(6) Standard**

8            Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure where

9  a plaintiff fails to assert a cognizable legal theory or allege sufficient facts under a cognizable legal

10  theory.  *See*, *e.g.*, *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83,

11  786 (9th Cir. 1996).  The complaint must include facts sufficient to suggest that the right to relief is

12  plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff cannot

13  survive a motion to dismiss with "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."

14  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a

15  formulaic recitation of the elements of a cause of action will not do.'").  A plaintiff must plead

16  "factual content that allows the court to draw the reasonable inference that the defendant is liable

17  for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  The Court may also consider documents

18  incorporated by reference in the complaint and need not credit as true allegations in the complaint

19  that are contradicted by these documents.  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112,

20  1115 (9th Cir. 2014).

21

22

23  _____

24  [3]      Although the Second Amended Complaint initially refers to the two versions of Cloudera's
    employment agreement as the PIIA (for the Hortonworks version) and the ECIIPAA (for the

25  Cloudera version) when describing their provisions (SAC ¶¶ 19-36), the rest of the Second
    Amended Complaint appears to use PIIA or PIIA agreements to refer to both versions of the

26  document collectively, (*e.g.*, *id.* ¶¶ 37, 42-43, 153, 160).  Notably, while the Second Amended
    Complaint refers to the agreement signed by Mr. Delaney as a PIIA (SAC ¶¶ 66, 67, 70, 71, 75, 76,

27  78), the agreement he signed was an ECIIPAA.  This is apparent from the fact that the section of
    Delaney's agreement quoted in paragraph 67 of the Second Amended Complaint is from the

28  ECIIPAA, not the PIIA.  For the avoidance of doubt, Databricks has submitted Mr. Delaney's
    ECIIPAA as Exhibit C to the Declaration of Christopher G. Clark.

DEFENDANT'S MOTION TO DISMISS SAC                                    CASE NO.: 4:21-cv-01217-HSG

### B. Applicable Law

A federal court exercising supplemental jurisdiction must apply the choice-of-law rules of the state in which it sits. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). However, when a case is transferred between federal courts pursuant to 28 U.S.C. § 1404(a), the transferee court applies the state law that the transferor court would have applied if the case had not been transferred. *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). Because this case was transferred to this Court from the U.S. District Court for the Northern District of Georgia, Georgia choice-of-law rules apply to state law claims such as the tortious interference claim in Count I.

Under Georgia's choice-of-law rules, the law of the jurisdiction chosen by the parties to a contract will govern unless the application of the chosen jurisdiction's law violates Georgia's public policy. *Convergys Corp. v. Keener*, 276 Ga. 808, 582 S.E.2d 84, 85-86 (2003).

## II. THE COURT SHOULD DISMISS THE TORTIOUS INTERFERENCE CLAIM IN COUNT I

To state a claim of tortious interference with contractual relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1176-77 (N.D. Cal. 2020); *see also Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 208-09, 605 S.E.2d 892, 897-98 (2004) (describing the elements of a tortious interference with contract claim under Georgia law, including that "the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff").

Cloudera's purported tortious interference claim fails for two fundamental reasons. First, Cloudera fails to plausibly plead a single breach of an enforceable employee non-solicitation obligation by Mr. Nieters or any of the unidentified former Cloudera employees mentioned in the Second Amended Complaint. Second, Cloudera fails to plausibly plead that any valid and

6

1   enforceable employee non-solicitation obligation even exists between Mr. Delaney and Cloudera.

2   Absent any plausible allegation of an actual breach of a valid contractual provision in an

3   underlying contract between Cloudera and one of its former employees, the Second Amended

4   Complaint cannot plausibly allege that Databricks tortiously induced such a breach.

5          **A.**      **Count I Fails To State A Claim And Should Be**
                     **Dismissed To The Extent That It Is Based On Conclusory**

6                        <u>**Allegations Regarding Dozens Of Unidentified Former Employees**</u>

7         As with the first two complaints that Cloudera filed in this action, Count I in the Second

8   Amended Complaint again conclusorily alleges that "dozens" of unnamed former Cloudera

9   employees purportedly recruited other unnamed Cloudera employees.  (SAC ¶ 160.)  This Court

10  already has determined that such bare allegations fail to state a claim and has said as much when

11  the Court dismissed Cloudera's prior attempt to assert a non-solicitation tortious interference claim.

12  (MTD Order at 9-10.)  Cloudera's persistence in making this defective allegation conflicts with this

13  Court's prior rulings.

14        Moreover, contrary to this Court's directive in the MTD Order, the Second Amended

15  Complaint fails to identify any of the basic facts regarding these "dozens" of individuals, including

16  (1) the names of the unspecified individual former Cloudera employee whose contracts Databricks

17  allegedly interfered with, (2) the unspecified individual former Cloudera employee's residence and

18  place of work, (3) whether the unspecified individual former Cloudera employee worked remotely,

19  and (4) whether those unspecified individual Cloudera employees even had employment

20  agreements with Cloudera and, if they did, whether those employment agreements are

21  substantively identical to the agreements referred to in the Second Amended Complaint.

22  Allegations of purported breaches by unnamed individuals through the recruitment of other

23  unnamed individuals cannot put Databricks on notice of the claim being asserted against it.  As this

24  Court expressly stated, Databricks cannot "effectively defend against this non-solicitation tort

25  claim" without these basic facts.  (MTD Order at 10.)

26        The Court can and should dismiss Count I to the extent it is based on purported breaches of

27  non-solicitation provisions by former Cloudera employees that are not specifically identified by

28  name in the Second Amended Complaint.

7

**B.    Count I Fails To State A Claim And Should Be Dismissed As To Mr. Nieters**

**1.    The Second Amended Complaint Fails To Plausibly Plead Any Solicitation By Mr. Nieters Of Any Cloudera Employee**

Count I of the Second Amended Complaint is deficient as to Mr. Nieters, because the Second Amended Complaint does not include a single well-pled allegation of any breach by him of the employee non-solicitation provision, let alone any actions taken by Databricks to purportedly induce such a breach.

This Court has already found that Cloudera's conclusory "information and belief" allegations regarding Mr. Nieters "are not sufficient allegations to plausibly support an inference that Databricks unlawfully induced Nieters or other unnamed individuals to recruit former Cloudera employees."  (MTD Order at 9-10.)

Cloudera has made no attempt to remedy this deficiency in the Second Amended Complaint.  Besides adding Mr. Nieters's place of work, the Second Amended Complaint does not add a single new non-conclusory allegation regarding Mr. Nieters's alleged conduct.  (*Compare* SAC ¶¶ 86-96, 98, 99, 111, 112, 149, 154, 158, 160 (paragraphs referencing Mr. Nieters in the Second Amended Complaint) *and* Am. Compl. ¶¶ 51, 52, 89, 91, 92, 94, 96-99, 101-103, 105, 106, 145, 147, 171, 173 (corresponding paragraphs in the Amended Complaint).)  Instead, Count I of the Second Amended Complaint relies only on bare allegations "on information and belief" that Mr. Nieters purportedly recruited Mr. Doverspike.  (SAC ¶¶ 95, 112, 149.)  These are textbook examples of speculative and deficient allegations that are not sufficient to meet the Rule 8(a) plausibility standard.  Fed. R. Civ. P. 8(a).  "[P]leading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."  *Solis v. City of Fresno*, No. 1:11-cv-00053 AWI GSA, 2012 WL 868681, at \*8 (E.D. Cal. Mar. 13, 2012); *see also Am. Homepatient, Inc. v. Collier*, No. CIV.A. 274-N, 2006 WL 1134170, at \*4 (Del. Ch. Apr. 19, 2006) ("Without a breach of contract, there can be no tortious interference.").  The Court can and should dismiss Count I as to Mr. Nieters on this ground alone.

## 2. The Employee Non-Solicitation Provision
## In The Nieters Agreement Is Not Enforceable

Count I of the Second Amended Complaint is also deficient as to Mr. Nieters as a matter of law because the employee non-solicitation provision that Databricks purportedly induced Mr. Nieters to breach is unenforceable under California law, which is the law that governs any disputes between Mr. Nieters and Cloudera for breaches of his restrictive covenants.[4]

This Court previously recognized the choice-of-law issue raised by the Nieters Agreement, but deferred resolution of the issue to give Cloudera an opportunity to attempt to resolve the factual deficiencies of its claim (which it has not done).  (Clark Decl. Ex. A at 13:16-15:14.)

In a transparent attempt to avoid California's clear public policy against barriers to employee mobility, Mr. Nieters's employment agreement with Cloudera contains two choice-of-law provisions, one directing that any disputes between Mr. Nieters and Cloudera are subject to arbitration and the arbitrator will apply California law, and one directing that Delaware law would apply to Cloudera's restrictive covenants.  In addition, under the Georgia choice-of-law rules relevant to this action, this Court should only respect choice-of-law provisions to the extent that the applicable law does not conflict with Georgia public policy.  Georgia law does not permit broadly written "non-solicitation" provision such as the type Cloudera attempts to impose in the Nieters

---

[4]     The Second Amended Complaint alleges that Databricks induced Mr. Nieters, and others, to breach their contractual obligations with Cloudera "[d]espite its knowledge of the terms of the competitive restrictions under the PIIA agreements."  (SAC ¶ 160.)  Thus, Count I appears to be asserting that Databricks tortiously interfered with Mr. Nieters's PIIA.

Nevertheless, the Second Amended Complaint includes allegations regarding Mr. Nieters's Separation Agreement.  (SAC ¶¶ 90-96, 99, 112.)  To the extent that Cloudera intends to assert that Databricks tortiously interfered with the Separation Agreement, the Second Amended Complaint fails to plausibly allege that Databricks had knowledge of the agreement at the time it purportedly induced him to recruit Doverspike, a necessary element of a tortious interference claim.  *See Arthur J. Gallagher*, 498 F. Supp. 3d at 1176.  The Second Amended Complaint alleges that Cloudera notified Databricks of the "Employment Agreements and PIIA" entered into by Nieters (presumably referring to the Separation Agreement) on December 8, 2020, a week *after* Doverspike gave notice at Cloudera and informed them he had a new job at Databricks.  (SAC ¶¶ 98, 110-111.)  Even if Databricks's alleged prior knowledge of the forms of employment agreements used by Cloudera were sufficient to give it prior knowledge of the Nieters Agreement (*see id.* ¶ 97), the Second Amended Complaint provides no allegations that Databricks was aware of the contents of Cloudera's termination agreements.

9

Agreement, and so a Georgia court would not enforce the provision.

      (a)      **The Nieters Agreement Is Governed By California Law And So Its Employee Non-Solicitation Provision Is Unenforceable**

This Court should apply California law when determining whether Mr. Nieters breached the employee non-solicitation provision of the Nieters Agreement.  The Second Amended Complaint alleges that the employment agreements entered into by employees such as Mr. Nieters who were originally employed by Hortonworks contain choice-of-law provisions designating Delaware law as the governing law.  (SAC ¶ 28; *see also id.* ¶¶ 86, 89.)  However, as the Second Amended Complaint also acknowledges, the PIIA is not a standalone agreement.  (*Id.* ¶ 19.)  Rather it is an exhibit to the Offer Letter, which itself provides that "the complete agreement between you and the Company" consists of the Offer Letter, the PIIA, and the Mutual Arbitration Agreement, another exhibit to the Offer Letter.  (Clark Decl. Ex. B, Offer Letter ¶ 11.)  The PIIA, like the Offer Letter itself, is subject to the dispute resolution and choice-of-law provisions of the Mutual Arbitration Agreement, a fact that Cloudera conceded when it agreed that its breach of contract claim against Mr. Doverspike arising from purported breaches of the PIIA was subject to the Mutual Arbitration Agreement.  (*See* ECF No. 39 at 1.)  Specifically, the Mutual Arbitration Agreement provides that disputes arising from breaches of the PIIA shall be sent to arbitration, where the arbitrator "shall apply substantive and procedural California law to any dispute or claim, without reference to rules of conflict of law."  (Clark Decl. Ex. B, Mutual Arbitration Agreement at *Procedure*.)  The Offer Letter also directs that the terms of the employment agreement and "any disputes as to the meaning, effect, performance or validity of [the employment] agreement or arising out of, related to, or in any way connected with" that agreement "are subject to the Mutual Arbitration Agreement."  (*Id.*, Offer Letter ¶ 11.)

To the extent there is any doubt regarding whether the PIIA's or Mutual Arbitration Agreement's choice-of-law provisions controls, any doubt must be resolved in favor of the employee—namely, in favor of the least restrictive jurisdiction.  *See, e.g., Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016) (ambiguities in employer-prepared employment contract must be construed in employee's favor), *overruled in part on other grounds by Lamps Plus, Inc. v.*

1  *Varela*, 139 S. Ct. 1407, 1417-19 (2019); *Kuehn v. Selton & Assocs., Inc.*, 242 Ga. App. 662, 668,

2  530 S.E.2d 787, 793 (2000) (affirming that ambiguities in an employment contract should be

3  construed against the employer).[5]

4        California law is the governing substantive law for disputes between Cloudera and Mr.

5  Nieters regarding breaches of the PIIA under the Mutual Arbitration Agreement between the

6  parties.  (Clark Decl. Ex. B, Mutual Arbitration Agreement at *Procedure*.)  The PIIA's separate

7  choice-of-law provision is a transparent attempt by a California-based company to avoid

8  California's strong policies against restrictive covenants that limit competition and employee

9  mobility.

10        Although the Mutual Arbitration Agreement provision speaks specifically about arbitrations

11  between Cloudera and an individual employee, it is equally relevant to the issue of whether there

12  was a breach of the PIIA for the purposes of a tortious interference claim.  To hold otherwise

13  would produce an asymmetrical result that third parties to the PIIA (such as Databricks) could be

14  held liable for causing breaches of the PIIA by former Cloudera employees (such as Mr. Nieters)

15  while the employees themselves were held not to have breached the agreement (including where

16  the agreement is held unenforceable).  *See Off. Depot, Inc. v. Dist. at Howell Mill, LLC*, 309 Ga.

17  App. 525, 530, 710 S.E.2d 685, 689 (2011) (holding that a contract "must be read reasonably, in its

18  entirety, and in a way that does not lead to an absurd result").  A federal court applying Georgia

19  choice-of-law rules rejected an equally absurd argument in *Wetherington v. AmeriPath, Inc.*,

20  finding "no authority for applying different states' laws to various disputes under one single

21  contract" and applying one state's law to both its interpretation of the contract and the various

22  ───────────────

23  [5]       Recognizing California's strong public policy interest in barring anti-competitive
employment agreements, both California and Delaware courts have refused to enforce Delaware

24  choice-of-law provisions in employment contracts related to California-based employers like
Cloudera and Databricks, and instead applied California law to invalidate restrictive covenants.

25  *See, e.g., Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-CV-01207-DAD-
BAM, No. 1:17-CV-01056-DAD-BAM, 2019 WL 1400093, at *6 (E.D. Cal. Mar. 28, 2019)

26  (refusing to apply Delaware choice-of-law clause to restrictive covenants where the competing
companies were incorporated in Delaware but based in California); *Ascension Ins. Holdings, LLC*

27  *v. Underwood*, No. C.A. No. 9897-VCG, 2015 WL 356002, at *3 (Del. Ch. Jan. 28, 2015)
(refusing to apply Delaware choice-of-law clause to employment agreement for California-based

28  company incorporated in Delaware).

breach and tort claims asserted by the defendant.  No. 1:10-CV-1108-AT, 2012 WL 12868427, at

*7 (N.D. Ga. Mar. 30, 2012), *aff'd*, 566 F. App'x 850 (11th Cir. 2014).

### (b)  Employee Non-Solicitation Provisions Like Those At Issue Here Are Not Enforceable Under California Law

California law is clear that employee non-solicitation covenants are unenforceable restraints

on employee and are prohibited as a matter of law.  California Business & Professions Code

§ 16600, which codifies California's stated public policy favoring open competition and employee

mobility, provides that "[e]xcept as provided in this chapter, every contract by which anyone is

restrained from engaging in a lawful profession, trade, or business of any kind is to that extent

void."  California courts "have consistently affirmed that section 16600 evinces a settled legislative

policy in favor of open competition and employee mobility."  *Edwards v. Arthur Andersen LLP*, 44

Cal. 4th 937, 946 (2008).  Consistent with that policy, the California Court of Appeals, relying on

*Edwards,* has held that employee non-solicitation provisions are not valid under Section 16600

absent a statutory exception.  *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.,* 28 Cal. App.

5th 923, 938 (2018).  A number of courts in this district likewise have found that employee non-

solicitation provisions are unenforceable under California law.  *See Arthur J. Gallagher & Co.*, 498

F. Supp. 3d at 1155; *Barker v. Insight Glob., LLC*, No. 16-CV-07186-BLF, 2019 WL 176260, at *3

(N.D. Cal. Jan. 11, 2019); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal.

2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019).

Count I is precisely the type of claim that California courts have dismissed because the

underlying contractual provisions are unenforceable in California.  For example, in *Arthur J.*

*Gallagher & Co. v. Tarantino*, a company sued four former employees and a competitor for,

among other claims, tortious interference.  498 F. Supp. 3d at 1162.  The plaintiff alleged that the

defendant company knew that the former employees had enforceable employment contracts with

plaintiff and induced them to breach those contracts by soliciting the plaintiff's customers and

employees.  *Id.* at 1177.  Two of the former employees had customer and employee non-solicit

covenants in their employment agreement with the plaintiff.  *Id.* at 1166.  Agreeing with the

defendants that the non-solicit and non-compete provisions were unenforceable and contrary to

12

1   public policy and Section 16600, the court dismissed the tortious interference claim against the

2   defendant company because "[t]o the extent [plaintiff] focuses on breach of contract by [the former

3   employees], the no solicitation provisions of their contracts are not enforceable." *Id.* at 1177; *see*

4   *also TSI USA LLC v. Uber Techs., Inc.*, No. 17-CV-03536-HSG, 2018 WL 4638726, at *6 (N.D.

5   Cal. Sept. 25, 2018) (Gilliam, Jr., J.) (dismissing tortious interference claim with prejudice that was

6   asserted against the former client of a travel agency, who alleged that the former client directed a

7   competitor to hire its employee who serviced the former client's account, because the cause of

8   action was based on alleged interference of a non-compete agreement, and such "clauses are void

9   under California law").

10      Other courts have likewise dismissed tortious interference claims at the pleading stage

11   because of unenforceable non-solicitation provisions.  For example, in *Wells Fargo Insurance*

12   *Services USA, Inc. v. Link*, the Supreme Court of North Carolina upheld the dismissal of a tortious

13   interference claim against an employer based on alleged interference with its employee's customer

14   and employee non-solicitation covenants after the court found those covenants unenforceable.  827

15   S.E.2d 458, 476 (2019).  Specifically, the court noted that "[s]ince no valid contract existed based

16   on these covenants, Plaintiff's claims that the Defendants interfered with those covenants in the

17   Restrictive Agreements must also fail." *Id.; see also Danaher Corp. v. Lean Focus, LLC*, No. 19-

18   CV-750-WMC, 2020 WL 4260487, at *8 (W.D. Wis. July 24, 2020) (granting motion to dismiss

19   tortious interference claims in part because "the court finds that the Non-Solicitation Provision of

20   the 2012 Proprietary Interest Agreement is unenforceable, then this portion of the tortious

21   interference claim similarly fails").

22      The employee non-solicitation provision in the Nieters Agreement are unenforceable under

23   California law.  As such, any tortious interference claim based on that provision necessarily fails as

24   a matter of law.

25      **(c)      The Employee Non-Solicitation Provision In The Nieters**
                   **Agreement Also Is Unenforceable Under Georgia Law**
26

27      In any event, even if the PIIA's choice-of-law provision controlled, a court applying

28   Georgia choice-of-law rules would apply Georgia law (rather than Delaware law) to the employee

13

1   non-solicitation provision, because the provision is also unenforceable under Georgia law, and

2   Georgia courts do not enforce restrictive covenants that are contrary to Georgia public policy.

3          "While Georgia courts have disagreed about whether a restrictive covenant prohibiting a

4   former employee from soliciting a company's employees must be limited geographically to be

5   enforceable, Georgia courts have consistently held that such a covenant must allow the former

6   employee to have contact with other former employees."  *Wetherington*, 2012 WL 12868427, at

7   *11 (collecting cases).  For example, in *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28,

8   706 S.E.2d 660 (2011), the Georgia Court of Appeals held that a non-recruitment covenant was

9   "***invalid on its face***" because it barred unsolicited communications with the company's employees.

10  *Id.* at 32, 664 (emphasis added).  Just last week, the Georgia Court of Appeals found a similar non-

11  recruitment covenant overbroad—and so unenforceable—to the extent it was "not limited strictly to

12  soliciting BB&T employees into new employment or encouraging them to leave BB&T; it also

13  prohibited [the former employee] Renno from 'supporting' any BB&T employee's personal decision

14  to leave the company."  *BB&T Ins. Servs., Inc. v. Renno*, No. A21A1114, 2021 WL 4771343, at *8

15  (Ga. Ct. App. Oct. 13, 2021).  Likewise here, Paragraph 5(c) of the PIIA restricts former

16  employees from communicating with Cloudera employees in any way that "helped" the employee

17  leave Cloudera, whether that communication was solicited or unsolicited.  Thus, as in *Cox* and

18  *BB&T*, the provision is overly broad and invalid on its face under Georgia law, and would not be

19  enforced by a Georgia court as written, notwithstanding the Delaware choice-of-law provision.

20         **C.      Count I Fails To State A Claim And Should Be Dismissed
                     As To Mr. Delaney Because The Delaney Agreement Is Governed By**

21  **California Law And So Its Non-Solicitation Provision Is Unenforceable**

22         The Court should dismiss Count I as to Mr. Delaney because the non-solicitation provision

23  in the Delaney Agreement is governed by California law and is therefore unenforceable as a matter

24  of law.  The Second Amended Complaint acknowledges that the Delaney Agreement, including its

25  non-solicitation provision, is governed by California law.  (*See* SAC ¶ 35; Clark Decl. Ex. C,

26  Delaney Agreement, ¶ 8(a) ("This Intellectual Property Agreement will be governed by the laws of

27  the State of California as they apply to contracts entered into and wholly to be performed within

28  such State.").)

14

1    As discussed above in Section I.B.2(b), employee non-solicitation provisions are

2    unenforceable restraints on employee mobility under California law and are unenforceable as a

3    matter of law.  *See AMN Healthcare, Inc.*, 28 Cal. App. 5th at 938; *Arthur J. Gallagher & Co.*, 498

4    F. Supp. 3d at 1155; *Barker*, 2019 WL 176260, at *3; *WeRide Corp.*, 379 F. Supp. 3d at 852.  As

5    such, Cloudera cannot state a tortious interference claim based on such an unenforceable provision.

6    The Court should dismiss Count I as to Mr. Delaney as a matter of law.  *See Arthur J. Gallagher &*

7    *Co.*, 498 F. Supp. 3d at 1155.

8         **D.    The Court Should Dismiss Count I With Prejudice**

9         Cloudera has had an opportunity to file three pleadings in this action.  At the June hearing

10   and in the MTD Order, this Court gave Cloudera clear guidance on what information must be

11   included to plausibly plead a tortious interference claim.  Despite having nearly three months to

12   prepare its Second Amended Complaint after receiving the Court's guidance, Cloudera has failed to

13   identify any violative conduct.

14        In deciding whether leave to amend should be denied under Rule 15(a) of the Federal Rules

15   of Civil Procedure, a court considers whether there has been "undue delay, bad faith or dilatory

16   motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously*

17   *allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

18   amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

19        In particular, a "plaintiffs' repeated failure to cure the deficiencies raised by defendants

20   warrant[s] denial" of leave to amend.  *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049,

21   1053 (7th Cir. 2019).  For example, in *Irving Firemen's Relief & Retirement Fund v. Uber*

22   *Technologies*, this Court denied a plaintiff leave to re-plead claims, where despite multiple

23   attempts to amend, the second amended complaint "largely repeats statements that the Court

24   previously found were 'not actionable.'"  398 F. Supp. 3d 549, 556 (N.D. Cal. 2019) (Gilliam, Jr.,

25   J.), *aff'd* 998 F.3d 397 (9th Cir. 2021).  Thus, this Court found leave to amend was unwarranted

26   since "Plaintiff has previously been granted leave to amend and has subsequently failed to add the

27   requisite particularity."  *Id.* at 560 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,

28   1007 (9th Cir. 2009)); *see also Mulquin v. Nektar Therapeutics,* 510 F. Supp. 3d 854, 873 (N.D.

15

1  Cal. 2020) (Gilliam, Jr., J.) (dismissing second amended complaint without leave to amend because

2  "[p]laintiffs were previously granted an opportunity to remedy these flaws but failed to do so").

3       Having attempted to plead this claim three times now, Cloudera should not be granted leave

4  to make a fourth attempt.  The Court should deny Cloudera any further leave to amend.

5  **<u>CONCLUSION</u>**

6       For the foregoing reasons, the Court should dismiss Count I of the Second Amended

7  Complaint with prejudice.

8  DATED: October 22, 2021

9                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10              By:          /s/ Christopher G. Clark
                       Christopher G. Clark

11                    Attorney for Defendant
                    Databricks, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS SAC                 CASE NO.: 4:21-cv-01217-HSG